

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable W. B. King, Accountant
Joint Legislative Committee
Austin, Texas

Dear Sir:

Opinion No. O-6141
Re: Under the given facts is
the application in question
filed by the Midway Indepen-
dent School District on
September 30, 1943, an appli-
cation under the rural aid
law and the departmental con-
struction of same as to au-
thorize the legislative
accountant to approve the
Midway application for State
aid for the school year
1943-1944?

follows:

We are in receipt of your opinion request reading as

"House Bill Number 175, passed by the 48th
Legislature of Texas, provides for the payment of
state aid to certain school districts in Texas, and
among other provisions such law contains the follow-
ing language under Article 2:

"'Section 1.     The trustees of the
districts authorized to apply for
aid under the provisions of this
Act shall send to the State Superin-
tendent of Public Instruction on
forms provided by said authority,
all information that may be required.
Said forms will include a budget
by which the amount of Salary Aid
to which a school will be eligible
shall be determined ............. The
State Superintendent shall, subject
to the provisions of this Act, grant
to the school an amount of aid as
will, with State and County Available

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Funds, together with all other funds
including tuition, maintain the
school for such a period and in such
a manner as authorized in this Act ...'

"'Section 2.  All applications for
any type of aid authorized herein,
except tuition aid, shall be on
file with the State Department of
Education in Austin not later than
October 1 of each scholastic year
for which aid is asked.  Schools
whose applications for state aid
are filed later than October 1 of
each year for which aid is asked,
shall be ineligible for any type
of aid.'"

"The Midway Independent School District is a
state aid school qualified in all respects to receive
state aid under the rural aid law of the State of
Texas unless it is ineligible to receive such aid un-
der the provisions of the law above quoted.

"On September 30, 1943, the Midway Independent
School District of Madison County, Texas, filed in
proper form with the State Department of Education,
a tentative Salary Aid Approval sheet, prescribed
and distributed by that Department, and signed by
Deputy State Superintendent.

"On the basis of this tentative Salary Aid
Approval sheet, it has been the joint departmental
procedure to advance fifty per cent of the antici-
pated Salary Aid earnings to every school filing
said sheet.  (This is done pursuant to Article 9,
of the current Equalization Aid Law, which we quote
as follows: '. . . Initial payment of not more than
fifty per cent (50%) of salary, tuition and transporta-
tion aid may be made by the State Superintendent of
Public Instruction after September 1 of each year of
the biennium as soon as a basis for payment can be
determined, and approved by the Legislative Ac-
countant....')

"The Midway Independent School District, having
filed this tentative Salary Aid Approval sheet, would
have been eligible for the partial payment had it not
been that the records of this office reflected an over-
payment of $1166 to this particular school district dur-
ing the school year 1942-43.

"Had this overpayment been cleared prior to the final approval of the Salary Aid Advanced Payment, the Midway School would have received fifty per cent of its estimated earnings without further application of any kind. (Both the State Department of education and the Joint Legislative Accountant has approved the tentative Salary Aid Approval Sheet). The remaining fifty per cent of the salary aid earnings are approved and paid on the basis of a more detailed application which was filed by the district in question after October 1, 1943.

"The State Department of Education has approved the above mentioned application (that is, the application amending the tentative Salary Aid Approval sheet).

"Pursuant to these facts, I respectfully submit the following question:

"(1) Is the tentative Salary Aid Approval Sheet above mentioned filed by the Midway Independent School District on September 30, 1943, an application under the rural aid law and the departmental construction of same as to authorize me, as legislative accountant, to approve the Midway application for state aid for the school year 1943-44?

"* * *"

In addition to the foregoing letter you have furnished us with the file of all papers in connection with the application mentioned, which consists of the "tentative salary aid approval" filed in the Department of Education on September 30, 1943, and an "application for equalization school aid," filed in said Department on November 17, 1943.

We quote the following from Section 1 of Article 2 of Chapter 373, Acts of the 48th Legislature:

"The application shall be sworn to by the county superintendent of all common school districts and president and secretary of the board of trustees of all independent school districts applying for aid."

Section 2 of said Act which you quote in your letter has heretofore been held to be mandatory in our Opinion No. O-5423, a copy of which opinion you have. A district whose application is filed after October 1st is ineligible for any kind of aid.

The only paper filed in the Department of Education prior to October 1, 1943, was not signed and sworn to by the President and Secretary of the Board of Trustees of the Midway Independent School District, but was signed by W. C. Perkins, Deputy State Superintendent. There was nothing on file in the Department of Education upon which this tentative approval could have been based, and no other application being on file on October 1, 1943, it is our opinion that same is insufficient to warrant you as the Legislative Accountant to approve the Midway application for State Aid for the year 1943-44.

We admit that this ruling seems harsh and that it will prove burdensome to the Midway District to lose the aid to which it would have been entitled if it had filed a legal application prior to October 1, 1943.

In this connection, we quote the following from Texas Jurisprudence, Section 119, Volume 39:

"Generally speaking, and in ordinary cases, in applying and interpreting a statute a court is not concerned with the objection that it is burdensome, or that it operates harshly, unfairly or unjustly, since these are questions properly addressed to the Legislature. The function of the court is to determine what is the law, irrespective of its apparent justice or injustice; and obviously the fact that a rare case may arise wherein the operation of a statute will cause hardship, cannot affect a proper construction."

Any other construction of the statute than the one given herein would set a dangerous precedent.

"'Twill be recorded for a precedent;
And many an error by the same example,
Will rush into the State; it cannot be."

We are returning herewith the application filed on October 18, 1943, which you submitted to us in connection with your request.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *C. F. Gibson*

C. F. Gibson
Assistant

SEP 27 1944

GENERAL OF TEXAS

CFG:EP

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN